## JULIA v. CRITCHFIELD.

### (Circuit Court, S. D. New York. April 27, 1905.)

CORPORATIONS—STOCK—VALUE—EVIDENCE.

> In an action for breach of a contract to deliver to plaintiff 1,000 shares of 6 per cent. preferred stock of an asphalt mining company, evidence *held* to justify a verdict finding that its value was $75,000.

Motion to Set Aside Verdict as Against the Weight of Evidence and as Excessive.

L. Laflin Kellogg, for the motion.
W. Benton Crisp, opposed.

LACOMBE, Circuit Judge. This is a motion to set aside the verdict and order a new trial. So far as the motion is based upon the exceptions reserved during the progress of the trial, it need not be discussed. Possibly the court erred in the construction which it put upon the written contract, or in admitting or rejecting evidence relating thereto; but those exceptions can all be argued in the appellate court, and there finally determined. So, too, any alleged errors in the charge may be presented in that tribunal as effectively as here. As to the suggestion that the verdict—in favor of plaintiff on the whole case—is against the weight of evidence, it is unsound. If the contract was properly construed by the court, the evidence fully warranted a verdict for the plaintiff.

It is contended, however, that the amount of damages found by the jury is excessive. So far as the contention is directed to the proposition that upon the evidence nominal damages only could be awarded, that question can also be passed upon by the appellate court. It is a close one upon the authorities presented on this argument, but, if the defendant is right in his contention, the exception reserved to the court's refusal to instruct the jury that they could not give anything more than nominal damages sufficiently preserves his rights. The question, however, whether the jury erred, not in giving substantial damages, but in assessing the amount at $75,-000, instead of some smaller sum, should be disposed of here, because, under the practice in the federal courts, the appellate tribunal will have no power to pass upon it.

The only point, therefore, which will now be discussed, is whether, conceding that the jury were properly instructed to find substantial damages upon the testimony, their verdict is excessive. The problem submitted to them was "what would 1,000 shares of 6% preferred stock of this company have been worth on the day the plaintiff was entitled to receive it?" Defendant contends that no intelligent answer can be given to that question; that it is pure guesswork to name any sum. Incidentally it may be remarked that this contention, if sound, will secure a reversal upon the exceptions to the charge. But in addition it seems to the court that there were sufficient factors proved to warrant an intelligent deduction. Had the preferred stock been issued, it would have ranked below the $500,000 of bonds; but that $500,000 was all put into the property, in building railroads and wharves, putting up houses and plant, buying machinery, boats, etc. Since the asphalt deposit, when developed, turned out to be a valuable one, and the company a going concern, there is no reason to infer that the proceeds of the bonds was lost or seriously depreciated when invested there. On the contrary, the bringing together of all these materials in a place where their use could earn money presumably made their aggregate value higher than the total separate values of the units composing the plant. The jury were fairly warranted in concluding that the improvements put upon the property were of sufficient value to meet the prior lien of the $500,000 bonds. Besides the improvements, there was the original deposit of asphalt, with the concessions which gave the right to mine and export it; and besides the bonds, there was the issue of $700,000 of common stock. One witness testified that the stock was given out as a bonus to purchasers of bonds. The secretary of the company testified that it was issued for the property; i. e., the asphalt deposit and concessions. Whether the issue of common stock was large or small, it would rank below preferred stock, which latter, after the bonds were provided for, would take all the balance of the property up to the extent of preferred stock issued. The evidence showed that in three years 30,000 tons of asphalt were removed, and sold here at $20 to $25 a ton. Of course, there were large sums to be deducted from that selling price for expenses of production, freight, etc.; but it was a perfectly fair inference that there was money in

the business, or it would not have been continued for so long. There was evidence, too, from which the jury were warranted in finding that the total deposit was 200,000 tons. Under these circumstances, it is not an unreasonable deduction that the Inciarte mine itself, exclusive of the improvements, was worth not merely the 100,000 bolivars which were paid for it, but at least $100,000 over and above the sum which was spent upon the improvements. Undoubtedly this result is reached largely by inference from facts proven, and may fairly be described as in one sense speculative, but it is not more so than many verdicts which have been sustained; and, if it be assumed that there was no error in allowing the jury to figure out substantial damages from the testimony, the $75,000 they agreed upon was well within the limit which such testimony indicated. The real question in the case—on this branch of it— was whether the court ought not to have instructed the jury that there was not sufficient evidence to warrant a verdict for more than nominal damages. The opinion expressed on the argument is unchanged by the discussion on this motion, although undoubtedly the question is a close one. In any event, it may more appropriately be answered by the appellate court.

The motion is denied.